UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RANADA BRIDGES, | |
| Plaintiff, | Case No. 3:25-cv-000324 |
| v. | Judge Waverly D. Crenshaw, Jr. |
| FRANK BISIGNANO[1], Commissioner of Social Security | Magistrate Luke A. Evans |
| Defendant. | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## **REPORT AND RECOMMENDATION**

Plaintiff Renada Bridges filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for a closed period of disability and for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. (Doc. No. 1.) Plaintiff has moved for judgment on the administrative record (Doc. No. 7), and Defendant has responded in opposition (Doc. No. 14).

Having considered the parties' arguments and the administrative record (Doc. No. 6) as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Plaintiff's motion for judgment on the record be Denied.

---

[1]     Frank Bisignano was sworn in as Commissioner of Social Security on May 7, 2025. Press Release, Soc. Sec. Nat'l Press Off., Fin. Servs. Indus. Leader Frank Bisignano to be the 18th Comm'r of Soc. Sec. (May 7, 2025), https://www.ssa.gov/news/en/press/releases/2025-05-07.html [https://perma.cc/VSC6-YCLM] (last visited Sep. 24, 2025). Under Federal Rule of Civil Procedure 25(d), Bisignano is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

## I.    Background

### A.    Plaintiff's DIB Application[2]

Plaintiff applied for DIB on January 21, 2022, alleging that she has been disabled and unable to work since September 15, 2019, because of lower back arthritis, protruding discs, joint disease, foraminal stenosis of discs, fissure tear, narrowing of the space between discs, anxiety and depression disorders, fibromyalgia, bilateral carpal tunnel syndrome, edema, rheumatoid arthritis, elevated liver enzymes, and swelling of her legs. (AR at 66.[3]) Defendant denied Plaintiff's application initially and on reconsideration. (AR at 77, 85.) At Plaintiff's request, an administrative law judge (ALJ) held a telephonic hearing regarding her application on April 18, 2024. (AR at 34–45.) Plaintiff appeared alongside a non-attorney representative and testified. (AR 37, 38–42.) The ALJ also heard testimony from a vocational expert. (AR 42–45.)

### B.    The ALJ's Findings

On May 8, 2024, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and applicable regulations and denied her claim for DIB. (AR 16–29.) The ALJ made the following enumerated findings:

> 1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2023.

---

[2]    In her motion for judgment on the administrative record, Plaintiff asserts she is "seeking reversal of [Defendant's] decision denying Plaintiff's eligibility for Social Security Disability and Supplemental Security Income benefits . . . ." (Doc. No. 7 at 1.) However, the administrative record indicates that Defendant's final decision only considered Plaintiff's eligibility for DIB. (AR at 66.) As a result, the Court focuses only on Plaintiff's claim for DIB.

[3]    The transcript of the administrative record (Doc. No. 6) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of September 15, 2019, through her date last insured of March 31, 2023 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe impairments: spine disorder and obesity (20 CFR 404.1520(c)).

*          *          *

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

*          *          *

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that was limited to frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping, crouching, kneeling, crawling, and balancing; and avoiding concentrated exposure to work around hazardous machinery and moving parts and work at unprotected heights.

*          *          *

6.      Through the date last insured, the claimant was capable of performing past relevant work as a receptionist and an administrative clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

*          *          *

7.      The claimant was not under a disability, as defined in the Social Security Act, at any time from September 15, 2019, the alleged onset date, through March 31, 2023, the date last insured (20 CFR 404.1520(f)).

(AR at 19–29.) The Social Security Appeals Council denied Plaintiff's request for review

on February 19, 2025, making the ALJ's decision the final decision of Defendant.

(AR at 5–7.)

### C.      Appeal Under 42 U.S.C. § 405(g)

Plaintiff filed this action for review of the ALJ's decision on March 21, 2025 (Doc. No. 1),

and this Court has jurisdiction under 42 U.S.C. § 405(g). Plaintiff contests the ALJ's findings on

3

multiple grounds. First, Plaintiff argues that the ALJ committed reversable error where the ALJ failed to find that Plaintiff suffers from severe mental impairment for purposes of the Social Security Act. (Doc. No. 7-1 at 11.) Plaintiff also maintains that the ALJ erred in determining Plaintiff's "residual functional capacity" (RFC) because he failed to properly consider record evidence of Plaintiff's impairments and their effects on her ability to work. (Doc. No. 7-1.) On this alleged point of error, Plaintiff argues the decision should be reversed, in part, because the ALJ did not give sufficient consideration to Plaintiff's fibromyalgia diagnosis. (*Id.*) Finally, Plaintiff asserts that the ALJ erred in evaluating Plaintiff's disabling symptoms because the ALJ's findings were not supported by substantial record evidence and because he impermissibly "cherry-pick[ed]" record evidence to make his determination that Plaintiff is not disabled. (*Id.* at 21.)

Defendant opposes reversal and argues that he reasonably evaluated the medical evidence and Plaintiff's subjective complaints about her symptoms on the record and that the final decision was ultimately supported by substantial evidence. (Doc. No. 14.) Plaintiff declined to file an optional reply and therefore the instant motion is ripe for consideration.

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the

4

substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

## B.  Determining Disability at the Administrative Level

Plaintiff applied for DIB under Title II of the Social Security Act, which is an insurance program that "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). To receive DIB, Plaintiff must establish that she had a disability on or before the last date she was eligible for insurance under Title II, which is determined based on her earnings record. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. "Disability" in this context is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R.

5

§ 404.1520(a)(4). At step one, the ALJ considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. § 404.1520(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant's RFC permits her to perform past

relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. § 404.1520(a)(4)(v).

## III.     Analysis

Plaintiff's arguments challenge the ALJ's determination that she is not disabled under SSA regulations where the ALJ found that, despite Plaintiff's physical and mental impairments, Plaintiff has the RFC to perform "light work" as set forth by SSA regulations with further light exertional limitations. (AR at 23.)

Specifically, Plaintiff argues that the ALJ committed reversable error by failing to: (1) find that any of Plaintiff's mental health conditions constituted severe impairments for purposes of the Social Security Act; (2) properly consider all of the record evidence when determining Plaintiff's RFC; and (3) properly evaluate Plaintiff's disabling symptoms.

The Court will address each alleged point of error in turn.

### A.     Assessment of Plaintiff's Mental Impairments

In his decision, the ALJ recognized Plaintiff's anxiety and depression disorders as impairments, but found they were "non-severe" under SSA regulations because "[t]he record supports a finding that these impairments have not caused more than minimal limitation in the ability to perform basic work activities . . . ." (AR at 21.) Plaintiff's argument on this point

7

Case 3:25-cv-00324     Document 15     Filed 03/12/26     Page 7 of 18 PageID #: 744

conflates two distinct considerations. Plaintiff argues first that the ALJ's assessment is erroneous because Plaintiff's anxiety and depression disorders are actually severe impairments and that, in finding otherwise, the ALJ ignored record evidence sufficient to show the severity of those impairments. (Doc. No. 7-1.) The remainder of Plaintiff's argument here alleges error because the ALJ did not adequately consider the impact of Plaintiff's severe and non-severe impairments on her RFC. (*Id.*) As the ALJ correctly recognized, "[t]he limitations identified in the 'paragraph B' criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments" (AR at 23) and therefore Plaintiff's argument will be considered in reviewing her RFC argument.

Plaintiff argues that the ALJ erred, in part, because there is record evidence that Plaintiff experienced depression and "was consistently diagnosed with major depressive disorder[.]" (Doc. No. 7-1 at 11 (citing AR at 595, 624).) The ALJ stated more specifically that "there is no evidence of any mental health treatment during" the time period between the AOD of September 15, 2019, through Plaintiff's DLI of March 31, 2023. (AR at 22.) However, even if there was evidence of Plaintiff's treatment for her mental impairments during the applicable period that "[wa]s considered to be substantial, it is insufficient on its own to warrant reversal." *Shelton v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-00093, 2020 WL 707586, at *9 (M.D. Tenn. Feb. 12, 2020), *report and recommendation adopted sub nom. Shelton v. Saul*, 2020 WL 1284628 (M.D. Tenn. Mar. 18, 2020). This Court must defer to an ALJ's finding that is supported by substantial evidence "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also id.* ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." (alteration in original) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Here, the ALJ explained that, in assessing the severity of Plaintiff's mental impairments, he considered record evidence, observations of SSA psychological consultative examiner, Dr. Linda Blazina, and the effects of Plaintiff's impairments on the four broad areas of mental functioning colloquially known as "paragraph B criteria." (AR at 22.) For example, he cited the same expert assessment as Plaintiff regarding Plaintiff's attachment disorder and its effects on the paragraph B criteria. (*Id.*) As the ALJ and Plaintiff note, Dr. Blazina assessed that Plaintiff's anxiety and depression moderately impaired her abilities to sustain her concentration, attention, and persistence, interact socially, and adapt to changes and tolerate the normal stresses of the workplace. (AR at 22, 544.); (Doc. No. 7-1.)

However, the ALJ cited other record evidence as more persuasive than Dr. Blazina's assessment. Relying on the assessments of two separate psychological consultants, both of whom reviewed Dr. Blazina's February 16, 2023 consultative evaluation, the lack of record or testimonial evidence of significant mental symptoms or limitations, and the lack of evidence of consistent mental health treatment for the disability period, the ALJ found that there was substantial evidence to support a determination that Plaintiff's anxiety and depression disorders are non-severe mental impairments. (AR at 22, 55–56, 66–67.) Considering the available evidence, the ALJ concluded that, because neither disorder considered singly and in combination caused more than "'mild'" limitation in any one of the paragraph B criteria, Plaintiff's impairments overall impose only minimal limitation on her ability to do basic work activities and are, therefore, non-severe. (AR at 23.) On this argument, the Court finds that Plaintiff has not adequately shown that the ALJ's determination lacks the support of substantial record evidence.

### B.     Formulating Plaintiff's RFC

Plaintiff's next argument for reversal is that the ALJ erred by not properly considering the record evidence when formulating Plaintiff's RFC. (Doc. No. 7-1.) Plaintiff's argument is two-

pronged. First, Plaintiff argues that the ALJ committed reversable error because he failed to "consider both the severe and non-severe impairments in the remaining steps of the evaluation." (*Id.* at 12.) Plaintiff further states that the ALJ "failed to [consider both] in this case, as the ALJ's RFC finding contains no mental limitations[.]" (*Id.*)

The ALJ's decision plainly demonstrates that all medically determinable impairments were considered. The ALJ's full explanation at this step is included in the administrative record, but the Court highlights the following relevant paragraphs:

> **After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that was limited to frequent climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent stooping, crouching, kneeling, crawling, and balancing; and avoiding concentrated exposure to work around hazardous machinery and moving parts and work at unprotected heights.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

(AR at 23–24.)

The SSA has promised DIB claimants that it "will consider all evidence in [the] case record" when determining disability claims. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). However, "the ALJ need not expressly mention every piece of evidence" he or she considered in the written opinion "so long as the overall decision was supported by substantial evidence." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 250 (6th Cir. 2015) (first citing *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999); and then citing 20 C.F.R. § 404.953); *see also Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013) ("[W]e do not require the ALJ to remark on every piece of evidence. . . . Our review is whether the ALJ's decision rests on

substantial evidence."). The Court finds that the ALJ not only considered Plaintiff's severe and non-severe medically determinable impairments in formulating her RFC, the ALJ also explained in detail how each impairment affects Plaintiff's RFC. (*see* AR at 23–28.)

Plaintiff also argues that the ALJ erred in assessing Plaintiff's RFC because he "failed to properly consider the opinion offered by [Plaintiff's medical provider] Nurse Urell[.]" (Doc. No. 7-1 at 16.) Plaintiff correctly recognizes that, in considering medical professionals' opinions, an ALJ no longer gives deference or evidentiary weight to that opinion solely because she is the treating physician (or nurse practitioner[4]). (*Id.* at 14–15 (first quoting 20 C.F.R. § 416.920c(a) and then citing *Wilcoxson v. Saul*, CIVIL ACTION NO. 1:19-CV-00145, 2020 WL 3097081, at *5 (W.D. Ky. June 10, 2020).) Instead, ALJ's now consider five factors when assessing the persuasiveness of medical opinions and prior administrative medical findings, including: (1) supportability, (2) consistency, (3) the relationship between the individual providing the medical opinion and the claimant, (4) the opinion provider's specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5). Of those factors, supportability and consistency are most important and are the only factors an ALJ must discuss applying in their decisions. 20 C.F.R. § 404.1520(b)(2).

The ALJ explained the following in weighing Nurse Urell's medical opinion in support of Plaintiff's claim:

> Nurse Urell's medical opinion is not persuasive as it not well-supported by their own treatment records which document limited range of motion, tenderness, and edema but does not specify the severity of the claimant's edema. There is nothing in Dr. Urell's treatment records from the period in question to support their medical opinion of excessive work absences or significant adverse side effects from

---

[4] The ALJ refers to Plaintiff's primary provider as both "Nurse Practitioner" and "Doctor" but record evidence reflects Urell is a Nurse Practitioner. (AR at 553.)

medication or their opined exertional, postural, manipulative, or environmental limitations.

Dr. Urell's medical opinion is also not consistent with other evidence, such as examination findings of normal gait and strength and negative straight leg raises, the claimant's reports of improved functioning with medication without adverse side effects, and the claimant's reported daily living activities.

(AR at 28.)

Plaintiff argues the ALJ's persuasiveness analysis erroneously applies the supportability and consistency factors. First, Plaintiff asserts the ALJ erred in examining the supportability of Nurse Urell's medical opinion because he improperly substituted "his lay opinion for that of a medical professional" despite not being qualified to "determine that the findings in Nurse Urell's notes are insufficient to support her conclusions" and because the ALJ failed to consider record evidence supporting Nurse Urell's opinion. (Doc. No. 7-1 at 16.)

Plaintiff similarly argues that the ALJ erred in assessing the consistency of Nurse Urell's medical opinion regarding Plaintiff's physical limitations because, for example, Dr. Johnson, one of the medical consultants who examined Plaintiff for Tennessee's disability determination (AR at 536–38), and Dr. T.S. Baker (*see, e.g.,* AR at 502–17), one of Plaintiff's prior treating physicians, included in their assessments instances of Plaintiff's physical limitations due to some of the same medical issues cited by Nurse Urell, such as bilateral edema of the knees. (Doc. No. 7-1.)

Defendant challenges Plaintiff's assertions for the same reasons he has argued this action must fail: Plaintiff has not met her burden of showing the ALJ's final decision is not supported by substantial evidence in the record. (Doc. No. 14.) The Court agrees. As recognized above, the Court will not disturb a final decision where it is supported by substantial record evidence. Here, the ALJ explained that Nurse Urell's medical opinion was not persuasive, in relevant part, because it was unsupported by, and inconsistent with, objective medical evidence and other medical

12

opinions on the record. The ALJ specifically cites the inconsistencies internal to Nurse Urell's assessment when considering her persuasiveness. The ALJ explains that, despite Nurse Urell's opinion that Plaintiff is restricted to a high degree by her ailments, the nurse's own medical records from the period in question do not support such restrictions. (AR at 28.)

In short, the record evidence is such that, although a reasonable mind may disagree, that reasonable mind could accept the record evidence as adequate to support the ALJ's conclusion. *Baker v. Comm'r of Soc. Sec.*, 21 App'x 313, 315 (6th Cir. 2001) (explaining what constitutes "substantial evidence"). As a result, Plaintiff has not met her burden and the Court should not disturb Defendant's final decision on this point. *Smith v. Berryhill*, NO. 3:15-cv-00600, 2017 WL 3237794, at *2 (M.D. Tenn. July 31, 2017) ("The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion.") (quoting *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016)).

**C.     Evaluation of Plaintiff's Disabling Symptoms**

Plaintiff's third and final statement of error pertains to the ALJ's evaluation of Plaintiff's disabling symptoms as subjectively described by Plaintiff. (Doc. No. 7-1.) On this subject, the ALJ explained:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other

13

evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

At the hearing, the claimant testified that they cannot work because of daily pain and difficulty taking care of themselves on a daily basis. They stated that it takes time for them to get out of bed or go to the bathroom and that they have to elevate their legs daily because of swelling. The claimant stated that they have stiffness in their fingers, arms, and hips and that their whole body feels sore. The claimant stated that they get cramping in their hands that affects their ability to open jars and clean and dress themselves. The claimant testified that they can be on their feet for "maybe" five minutes before their legs start to swell and they start getting throbbing pain in their back and aching in their hips and knees. The claimant stated that the heaviest weight they can lift is three to five pounds but that they cannot carry five pounds throughout their house. As for their daily living activities, the claimant testified that they go extended periods of time in the same clothes and extended periods of time without bathing. They stated that their husband does the cooking and cleaning and that they take naps during the day because of fatigue.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR at 24.)

Plaintiff argues that the ALJ "failed to state with any specificity the evidence upon which he relies to find [Plaintiff's] symptoms not disabling[.]" (Doc. No. 7-1 at 21.) At the same time that Plaintiff asserts the ALJ did not sufficiently cite to the evidence upon which he relied, Plaintiff also faults the ALJ for purportedly relying too heavily on, and "cherry-picking" from, the objective medical evidence on which he did rely. (*Id.*)

As the Court has explained previously:

Social Security Ruling 16-3p requires the ALJ to consider and evaluate whether a claimant's allegations concerning the severity of his symptoms "are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at \*6. This evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve

pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

*Gibson v. Kijakazi*, No. 1:20-0082, 2022 WL 1086501, at *7 (M.D. Tenn. Apr. 11, 2022) (internal footnote omitted)*, report and recommendation adopted*, 2022 WL 1432537 (M.D. Tenn. May 05, 2022). When reviewing an ALJ's assessment under these factors, "'an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Boles v. Saul*, No. 2:15-cv-00029, 2020 WL 57959, at *2 (M.D. Tenn. Jan. 6, 2020) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

Here, the ALJ set forth Plaintiff's subjective complaints based on her testimony and reports from her medical records and agreed that the symptoms Plaintiff testified to could reasonably be expected to arise from her medically determinable impairments. (AR at 24.) Ultimately, the ALJ found that, compared to the objective medical evidence cited throughout the decision, Plaintiff's subjective complaints of symptoms were "not entirely consistent[.]" (*Id.*) Considering the entire record, the Court finds that the ALJ was neither too vague about, nor overly reliant on, the objective medical evidence he considered when weighing Plaintiff's subjective complaints. Neither did the ALJ "cherry-pick" evidence. The ALJ cites numerous records containing references to Plaintiff's symptoms and subsequent references to symptom management and improvement. (AR at 24–26.) Plaintiff points to no specific evidence to support these arguments and, because the ALJ as the factfinder is entitled to deference when assessing a claimant's subjective complaints, the Court cannot find that the ALJ erred. *Boles*, 2020 WL 57959, at *2 (explaining that an ALJ did not err where they "did not simply rely upon boilerplate or hackneyed language to make [their] credibility determination" and "[i]nstead . . . compared [Plaintiff's] alleged pain and its limitations to the

record as a whole and found the subjective complaints to be inconsistent with the objective evidence." (citing *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 212 (6th Cir. 2015)).

Plaintiff also argues that the ALJ erred on this point because "the ALJ did not give any indication that he considered whether exertional limitations based on [Plaintiff's] fatigue would be appropriate." (Doc. No. 7-1 at 22.) There are two problems with this argument. First, Plaintiff points to this claim of error as inconsistent with Social Security Ruling 12-2p, which Plaintiff describes as "require[ing] ALJs to give special attention to pain and fatigue related limitations." (*Id.*) However, this argument fails.

At the outset, Plaintiff omits that SSR 12-2p is specific to the medically determinable impairment of fibromyalgia. And while there is medical evidence on the record describing Plaintiff as having fibromyalgia, Plaintiff did not explicitly seek review of the decision where the ALJ did not find Plaintiff's fibromyalgia to be an impairment. Defendant argues that Plaintiff waived review here by failing to challenge this omission. (Doc. No. 14.) Defendant is correct that, typically, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived'" because "'[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'" *Dollinger v. Comm'r of Soc. Sec.*, Case No. 22-3359, 2023 WL 1777386, at *1 n.1 (6th Cir. Feb. 6, 2023) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). Insofar as Plaintiff raises the ALJ's assessment of her subjective complaints regarding pain and fatigue within the context of her fibromyalgia, the Court agrees Plaintiff waived review.

On the narrower issue of whether the ALJ erred by failing to consider limitations caused by pain and fatigue symptoms from any impairments, Plaintiff's argument still fails. The ALJ explained in his decision that, despite the record evidence as a whole supporting a finding that

16

light exertional limitations is sufficient to assist Plaintiff in maintaining gainful employment, he nevertheless found fatigue to be a factor requiring greater limitations like "no climbing of ladders, ropes, or scaffolds and no concentrated exposure to work around hazardous machinery or moving parts or work at unprotected heights." (AR at 27.)

Overall, the Court finds that the ALJ did not err in assessing Plaintiff's subjective complaints regarding her symptoms. The ALJ relied on specific evidence to support his conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, including objective imaging reports and examination findings. Given such support, as well as the significant deference that must be afforded the ALJ's credibility determination, *see Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("[W]e affirm if the ALJ's determination is reasonable and supported by substantial evidence.") (internal citation and quotations omitted), the Court finds no reversible error in the ALJ's determination. This assertion of error is therefore rejected.

## IV. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDEDS that Plaintiff's motion for judgment on the administrative record (Docket No. 7) be DENIED and the Commissioner's decision be affirmed.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of March, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge